UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

MICHAEL SQUILLLANTE,

            Plaintiff,

- against -

CIGNA CORPORATION, LIFE
INSURANCE COMPANY OF NORTH
AMERICA, STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, STATE FARM LIFE AND
ACCIDENT ASSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY
COMPANY, STATE FARM GENERAL
INSURANCE COMPANY,

            Defendants.

------------------------------------------------------- X



<u>OPINION AND ORDER</u>

12 Civ. 6003 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        Michael Squillante commenced this action in the Supreme Court of New York County, New York, against Cigna Corporation ("Cigna"); Life Insurance Company of North America ("LINA"); and State Farm Mutual Automobile Insurance Company, State Farm Life and Accident Assurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company (collectively "State Farm"). Squillante alleges four causes of

action: (1) breach of contract against Cigna and LINA; (2) deceptive business practices under New York General Business Law ("NYGBL") Section 349 against Cigna and LINA; (3) declaratory judgment against Cigna and LINA; and (4) breach of contract against State Farm.  Defendant LINA timely removed this action to this Court based on diversity of citizenship.  Presently pending before the Court is Squillante's motion to remand.  For the reasons that follow, the motion is granted.

## II.   BACKGROUND[1]

Michael Squillante is a citizen of New York who worked as an independent contractor for State Farm prior to becoming disabled.[2]  State Farm is a group of Illinois corporations with principal places of business in Illinois.[3]  Cigna is a Delaware corporation of which LINA, another Delaware corporation, is a subsidiary.[4]  LINA issued the Group Long Term Disability Policy, Policy Number LK6903 (the "Policy"), effective January 1, 1999, to State Farm, allegedly for the

---

[1]   The following facts are drawn from the Complaint ("Compl."), Ex. B to the Declaration of Michail Z. Hack ("Hack Decl."); the Notice of Removal, Ex. A to Hack Decl.; and the parties' submissions regarding the pending motion.

[2]   *See* Compl. ¶ 1, 9.

[3]   *See id*. ¶ 4.

[4]   *See id*. ¶¶ 2-3.

2

benefit of State Farm's independent contractors.[5]  Subject to a 180-day waiting period, the Policy provides for the payment of up to one thousand dollars per month in the event that a covered individual becomes disabled.  Subject to another 180-day waiting period, the Policy also provides for the payment of up to fourteen thousand dollars per month if the covered individual's State Farm Agent's Agreement is terminated at any time prior to two years and 180 days of the date of disability.[6]

Squillante allegedly became disabled on April 2, 2010, when he fell off a ladder and injured his back.[7]  He then timely filed a claim under the Policy with LINA, which investigated his claim.[8]  Ultimately, Cigna and LINA denied his long-term disability claim based on the terms of the Policy.[9]  As a result, Squillante "seeks monetary damages in an amount to be determined by the trier of fact after

---

[5]   *See id.* ¶ 6.

[6]   *See id.* ¶ 7.  Squillante's State Farm Agent's Agreement was terminated on September 28, 2012.  *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand ("Opp. Mem") at 2.  As such, Squillante was not entitled to the higher rate when he commenced this action on July 3, 2012, three months prior to his termination.

[7]   *See* Hack Decl. ¶ 6.

[8]   *See id.* ¶ 7.

[9]   *See* Compl. ¶¶ 8-12.

trial, but not less than . . . $1,000 per month for each month from September 29, 2010," as well as interest and costs.[10] In the alternative, Squillante seeks the same amount from State Farm, on the theory that he was an intended third party beneficiary of the Policy.[11]  As another alternative, Squillante seeks the same amount, plus attorneys' fees, on the theory that each refusal to pay his disability claim was an unfair or deceptive trade practice in violation of NYGBL § 349.[12] Finally, Squillante seeks a declaratory judgment that: (1) he is "disabled" under the Policy; (2) Cigna and LINA are obligated to make payments under the Policy for as long as Squillante remains disabled; and (3) Squillante may seek another declaratory judgment should it be necessary.[13]

By a Notice of Removal dated August 6, 2012, LINA removed the action to this Court under 28 U.S.C. § 1441 on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332 ("section 1332").[14]  The Notice of Removal alleges that "[c]ombining all of [Squillante]'s claims, the amount in controversy is in

---

[10]   *Id.* ¶ 15.

[11]   *See id.* ¶¶ 31-32.

[12]   *See id.* ¶¶ 18-19, 23.

[13]   *See id.* ¶¶ 25-27.

[14]   *See* Notice of Removal, Ex. A to Hack Decl.

excess of $75,000."[15] LINA argues that this assertion is justified because: (1) the value of future, unaccrued benefits under the Policy exceeds seventy-five thousand dollars; and (2) the benefits accrued under the Policy, combined with Squillante's possible recovery under NYGBL § 349, exceed seventy-five thousand dollars.[16]

## III. STANDARD OF REVIEW

### A. Federal Removal Jurisdiction

Any civil action brought in state court may be removed to federal court if the federal court could exercise jurisdiction over the action.[17] A federal district court may exercise jurisdiction only if so authorized by the Constitution and by statute.[18] Under section 1332, district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

---

[15] *Id.* ¶ 17.

[16] *See* Opp. Mem. at 3-6.

[17] *See* 28 U.S.C. § 1441(a).

[18] *See* U.S. Const. art. III, § 1 ("The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."). *See also Exxon Mobil Corp. v. Allapattah Servs., Inc.* 545 U.S. 546, 552 (2005) ("The district courts of the United States, as we have said many times, are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." (quotation marks and citation omitted)).

states . . . ."[19]  The "existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal . . . ."[20]

### B. Remand

"On a motion to remand, the party seeking removal from state court bears the burden of establishing that federal jurisdiction is proper."[21]  Due to concerns of comity and federalism, the removal statute is generally strictly construed against the party seeking removal.[22]  Moreover, the party asserting federal jurisdiction bears the burden of proving that federal jurisdiction exists.[23]

---

[19]   28 U.S.C. § 1332.

[20]   *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) (citations omitted).

[21]   *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 863 F. Supp. 2d 351, 353-54 (S.D.N.Y. 2012) (citing *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011)).

[22]   *See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 201 (2d Cir. 2001) ("the removal statute, like other jurisdictional statutes, is to be strictly construed") (citations omitted).  *See also Goel v. Ramachandran*, 823 F. Supp. 2d 206, 209 (S.D.N.Y. 2011) (citing, *inter alia*, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)).

[23]   *See Goel*, 823 F. Supp. 2d at at 210 (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

Generally the "sum demanded in good faith in the initial pleading" is deemed to be the amount in controversy.[24] However, when the initial pleading seeks either non-monetary relief, or monetary relief in a circumstance where the state's pleading rules "either [do] not permit demand for a specific sum or permit[] recovery of damages in excess of the amount demanded[,]"[25] the proponent of federal jurisdiction must prove that the amount in controversy exceeds the jurisdictional amount by a preponderance of the evidence.[26] Proof of such may be drawn from the initial pleading,[27] or else "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ."[28]

C.   **Fee Shifting Under the Removal Statute**

Section 1447(c) of Title 28 of the United States Code ("section 1447(c)") states that "[a]n order remanding the case may require payment of just

---

[24]   28 U.S.C. § 1446(c)(2).

[25]   *Id*.

[26]   *See id*. § 1446(c)(2)(B).

[27]   *See id*. § 1446(b).

[28]   *Id*. § 1446(b)(3). The term "other paper" includes "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery . . . ." *Id*. § 1446(c)(3)(A).

costs and any actual expenses, including attorney fees, incurred as a result of the removal." Ordinarily, "'attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal,'"[29] measured at the time of removal. "A federal district court retains jurisdiction to decide a motion for fees and costs under [section] 1447(c) after it has remanded a case to state court."[30]

### D. Disability Benefits Under New York Law

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."[31] However, in cases where the claim to relief is based on the denial of a disability benefits claim, "only the withheld benefits that have accrued up to the date of the commencement of the suit can be relied upon to satisfy the amount in controversy requirement."[32] This is so because, under New York law, "it is

---

[29] *Williams v. International Gun-A-Rama*, 416 Fed. App'x 97, 99 (2d Cir. 2011) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)).

[30] *Calabro v. Aniqa Halal Live Poultry Corp.*, No. 09-CV-4859, 2009 WL 4893200, at *3 (E.D.N.Y. Dec. 15, 2009) (citing *Bryant v. Britt*, 420 F.3d 161, 162 (2d Cir. 2005)).

[31] *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 299 (E.D.N.Y. 2005) (quotation marks and citations omitted).

[32] *Conzo v. SMA Life Assurance Co.*, No. 01 Civ. 11243, 2003 WL 21018823, at *2 (S.D.N.Y. May 6, 2003) (dismissing insured's declaratory judgment suit for lack of subject matter jurisdiction because the accrued benefits under the policy were less than seventy-five thousand dollars). *Accord Scherer v.*

well-established that a plaintiff cannot recover anticipatory breach benefits under a disability insurance policy."[33] This rule is subject to the "narrow exception" that future benefits are considered only "where the insurer has repudiated the entire policy[,]"[34] not when it merely disclaims coverage under the policy.[35] Thus, for both breach of contract actions to recover disability benefits and declaratory judgment actions seeking to establish a right to recover allegedly past-due disability benefits, the amount in controversy is equal to the amount in arrears at the time the action is commenced.

---

*Equitable Life Assurance Society of U.S.*, 190 F. Supp. 2d 629, 632 (S.D.N.Y. 2002) ("In New York, a plaintiff who sues an insurer for failing to pay benefits under an insurance policy may recover only those benefits that have already accrued"), *vacated on other grounds*, 347 F.3d 394 (2d Cir. 2003).

[33]   *Berlly v. U.S. Life Ins. Co.*, No. 00 Civ.1999, 2001 WL 40771, at *2 (S.D.N.Y. Jan. 16, 2001) (dismissing, for lack of subject matter jurisdiction, plaintiff's action seeking a declaratory judgment that he was entitled to monthly disability payments on the grounds that the accrued benefits were less than seventy-five thousand dollars).

[34]   *Wurm v. Commercial Ins. Co. Of Newark, New Jersey*, 766 N.Y.S.2d 8, 12 (1st Dep't 2003).

[35]   *See Seward Park Hous. Corp. v. Greater New York Mut. Ins. Co.*, 836 N.Y.S.2d 99, 105 (1st Dep't 2007) (stating that "it is important to make clear . . . that a difference exists between true contractual repudiations—usually called anticipatory breaches—and run-of-the-mill breaches of contract such as those alleged by insureds upon receiving coverage disclaimers" and finding no repudiation when insurer spent nearly a year investigating its liability under the policy, and then "explain[ed] with reference to the terms of the contract" why it was disclaiming coverage).

### E. Deceptive Trade Practices Under New York Law

Section 349(a) of the NYGBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." In addition to granting a right of action to the Attorney General to enjoin and seek damages for such practices, the statute creates a private right of action for those injured by violations of the statue. The elements of a deceptive trade practices action are: "'(1) the defendant's challenged acts or practices are directed at consumers, (2) the acts or practices are misleading in a material way, and (3) the plaintiff sustains injury as a result.'"[36] Section 349(h) permits a plaintiff "to recover his actual damages or fifty dollars, whichever is greater . . . ."[37] Upon a finding of a wilful or knowing violation of the statute, a court may treble plaintiff's actual damages, up to one thousand dollars.[38] The statute further provides that, in such private actions, the court in its discretion may provide for reasonable attorneys' fees.[39]

## IV. DISCUSSION

---

[36] *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 282 (S.D.N.Y. 2011) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)).

[37] NYGBL § 349(h).

[38] *See id.*

[39] *See id.*

10

### A.     Unaccrued Benefits Under the Policy

Squillante argues that the amount in controversy does not exceed seventy-five thousand dollars because, at the time this action commenced, "LINA owed him a maximum of 20 months of arrears totaling $20,000."[40] LINA does not dispute that, at all relevant periods, the accrued benefits under the Policy were less than seventy-five thousand dollars. Instead LINA argues that, reduced to present value, the total value of the Policy is over the jurisdictional threshold.[41] Alternatively, LINA argues that, "at the monthly rate of $12,844, it would only take several months of benefits for [Squillante] to reach $75,000 in damages, which is likely to be within the pendency of this action . . . ."[42]

Neither of LINA's arguments is persuasive. Under New York law, an action to recover disability benefits implicates only those benefits that have accrued prior to the commencement of the action. This rule is subject to the narrow exception that, in cases of anticipatory breach, the total value of the policy is implicated. "Repudiation occurs when the insurer completely abrogates any

---

[40]     Memorandum of Law in Support of Plaintiff's Motion to Remand at 4.

[41]     *See* Opp. Mem. at 4 ("After being reduced to present value, the [maximum benefit under the Policy] is approximately $1,830,000.").

[42]     *Id.* LINA is referring to the higher monthly rate allowed by the Policy 180 days after Squillante's State Farm Agent's Agreement was terminated.

obligation [ever] to make monthly disability payments[,]"[43] even in the face of overwhelming evidence of disability. Nothing before this Court indicates that this case fits this exception. Instead, it appears that rather than completely repudiate the Policy, LINA investigated Squillante's claim and denied it pursuant to the terms of the Policy.[44] Consequently, it is not proper to consider unaccrued benefits under the Policy for the purposes of determining the amount in controversy.[45]

### B. Squillante's Possible Recovery Under NYGBL § 349

LINA's argument that the jurisdictional threshold may be reached by aggregating Squillante's unfair and deceptive trade practices claim with his other claims fares no better. As an initial matter, it is likely that the deceptive trade practices claim will be dismissed because it does not concern acts or practices directed at consumers.[46]

---

[43] *Wurm*, 766 N.Y.S.2d at 12.

[44] *See* Hack Decl. ¶¶ 7-8. *See also Seward Park Housing Corp.*, N.Y.S.2d at 105.

[45] *See Pollock*, 367 F. Supp. 2d at 299 ("benefit payments which accumulate during the pendency of the action do not affect the amount in controversy as of the date of the notice of removal.").

[46] *See Korn v. First UNUM Life Ins. Co.*, 717 N.Y.S.2d 606, 606 (2d Dep't 2000) (dismissing NYGBL § 349(h) claim predicated on denial of disability coverage on the ground that it was essentially a private contract dispute and as such

Even assuming that Squillante's deceptive practices claim is viable, the amount in controversy is still not met. NYGBL § 349(h) provides for the award of actual damages (or fifty dollars, whichever is greater), treble damages up to one thousand dollars, and, at the court's discretion, reasonable attorneys' fees. It is only appropriate to aggregate the treble damages and the attorneys' fees with Squillante's breach of contract claim.[47]

At the commencement of the action, Squillante was owed a maximum of twenty thousand dollars.[48] Even granting LINA the one thousand dollars in treble damages, it is LINA's burden to prove, by a preponderance of the evidence, that the attorneys' fees awarded under section 349(h) will be over fifty-four thousand dollars (that is, greater than seventy-five thousand dollars less twenty-one thousand dollars). LINA has not met this burden. The grant of attorneys' fees under section 349(h) is discretionary, and the size of the possible fee award is completely speculative at this time.

---

did not involve conduct affecting consumers at large).

[47]  *See Pollock*, 367 F. Supp. 2d at 301 (stating that "no case . . . allows the aggregation of claims which seek the same damages in claims under varying theories" and declining to aggregate the compensatory portion of insured's breach of contract and NYGBL § 349(h) claims).

[48]  *See* Hack Decl. ¶ 12.

Squillante does not seek punitive damages, and the possible award of costs does not affect this analysis. Accordingly, the motion to remand is granted.

### C. Attorneys' Fees and Costs

The only remaining issue is whether to grant Squillante the attorneys' fees and costs he incurred as a consequence of LINA's removal. It appears that LINA, with the consent of the other defendants, removed this case on the strength of several non-precedential District of Connecticut cases.[49] Moreover, the defendants declined to voluntarily remand to state court after being apprised by Squillante's counsel of the controlling precedents laid out above.[50] And they continued to oppose Squillante's motion for remand even after being advised by this Court in a pre-motion conference that the Connecticut cases LINA cited were unpersuasive.[51]

Because the defendants have not presented an objective basis for removal, Squillante is entitled to his "just costs and any actual expenses, including

---

[49] *See* Opp. Mem. at 3-5. *See also id.* at 7 ("Plaintiff s request for attorneys' fees and costs should be denied because the Defendants' removal of this action was not unreasonable or unlawful. Instead, it was supported by case law from the District of Connecticut . . .").

[50] *See* Hack Decl. ¶ 17.

[51] *See* Plaintiff's Reply Memorandum of Law in Further Support of Its Motion to Remand at 7.

attorney fees, incurred as a result of the removal."[52] Squillante is directed to submit to the defendants, and the defendants are ordered to pay, Squillante's reasonable attorneys' fees and costs. If the parties cannot agree on the amount to be reimbursed within fourteen (14) days of the date of this Opinion and Order, Squillante should submit a bill of costs and fee application to the Court.

## IV. CONCLUSION

For the reasons set forth above, this action is remanded. This Court will retain jurisdiction over this case for the limited purpose of overseeing the cost and fee shifting discussed above. The Clerk of the Court is directed to close the motion (Docket No. 21) and this case. The Clerk of the Court is further directed to remand this action to the New York State Supreme Court, New York County.

---

[52] 28 U.S.C. § 1447(c).

SO ORDERED:

/s/ Shira A. Scheindlin

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         November 28, 2012

## - Appearances -

**For Plaintiff:**

Michail Z. Hack, Esq.
QUADRINO & SCHWARTZ, P.C.
666 Old Country Road, Suite 900
Garden City, New York 11530
(516) 745-1122

**For Defendants:**

Emily A. Hayes, Esq.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000